## CHARLES H. WAKELEE, Respondent, v. GEORGE GOODRUM, Appellant.

### No. 1267; October 22, 1867.

**Van Ness Ordinance.**—As Against One Entering Under Sale in Foreclosure of a valid mortgage to him and for over six years in adverse possession as to the grantee of a deed subsequent to the mortgage, such grantee cannot maintain title under the Van Ness ordinance, if up to the introduction of the ordinance into the council the only occupancy claimed by him was through there being a pile of lumber left on the premises by his grantors, and not included in the deed, which lumber he had agreed to take care of, the premises not being cultivated by him or substantially fenced.

**Ejectment—Strict Proof.**—When Parties Rely for a Recovery upon Technical Defects in the transfer of title to deprive others, who have purchased land in good faith and long improved and enjoyed it under the belief that they owned it, they cannot complain if they are required to make by proofs a strict technical title.

APPEAL from Twelfth Judicial District, San Francisco County.

Winans & Belknap for respondent; Peterson & Stow for appellant.

SAWYER, C. J.—This is an action to recover possession of a lot situated on the corner of Twelfth, formerly Brown, and Howard streets, San Francisco. On the 7th of August, 1854, one William Sheer executed a deed purporting to convey the premises in question, being two hundred and sixty-eight feet long on Twelfth street by one hundred and forty-five feet wide on the westerly end, and one hundred and twenty-eight feet, nine inches at the other on Howard street, to Biggs, Kibbe, and Overton. At the same time by another deed said Sheer conveyed to said Biggs, Kibbe and Overton another tract adjoining on the westerly end, and extending one hundred and thirty-two feet farther on Twelfth street, making the whole tract embraced in the two deeds four hundred feet long on Twelfth street. Sheer had no title except possession. On the 16th of January, 1855, said Biggs, Kibbe and Overton mortgaged the whole of these two tracts to defendant, Goodrum, to secure payment of the sum of four thousand dollars and interest, at the rate of three per cent per month; mortgage duly recorded on the same day. On the first day of April, 1855, Biggs, Kibbe and Overton executed and delivered to Edward H. Whiting a deed, purporting to convey to him the first-mentioned tract—the premises in question—which deed was recorded May 4, 1855. On the 25th of July, 1855, Goodrum commenced a suit to foreclose his said mortgage, filing a notice of lis pendens, making the mortgagors parties, but said Whiting was not made a party. This mortgage was regularly foreclosed as to everybody except Whiting, the property sold under the judgment, and purchased by Goodrum, who received the sheriff's deed, purporting to convey the land including the premises in question, on the 20th of May, 1856. Goodrum soon after entered into possession under said sheriff's deed, and he has ever since been in the adverse possession, claiming under said conveyance. The land is within the limits of the so-called Van Ness ordinance, and five years have not elapsed since the final confirmation of the city's claim to title under the Mexican government.

Whiting conveyed on the 1st of May, 1862, to Dibble and Byrne, who, in August following, conveyed to plaintiff. Plaintiff claims through Whiting on the ground that his interest was not cut off by the foreclosure suit. The defendant sets up the statute of limitations, which is clearly a good de-

fense, unless plaintiff can connect himself with the title of the city through the Van Ness ordinance. This he attempted to do. The court nonsuited him, but on a motion for new trial, the nonsuit was set aside, and a new trial granted. Defendant appeals from the order setting aside the nonsuit, and the question is, Did the plaintiff make out a prima facie case? The city of San Francisco by the ordinance referred to, granted all her right and claim to the lands within the corporate limits, "to the parties in the actual possession thereof, by themselves or tenants, on or before the first day of January, A. D. one thousand eight hundred and fifty-five, and to their heirs and assigns forever. . . . . Provided, such possession has been continued up to the time of the introduction of this ordinance in the common council," etc.: Laws 1858, p. 521. By the terms of the ordinance, it is as essential that the "actual possession" should be continued till the introduction of the ordinance, as that it should have existed on or before the first day of January. On the second lot above described as conveyed by Sheer to Biggs, Kibbe and Overton, fronting one hundred and thirty-two feet on Brown, or Twelfth street, Biggs and Kibbe entered soon after the conveyance to them, and each built a house, and soon after they built a substantial fence around them, the fence on the side toward Howard Street being two hundred sixty-eight feet from Howard Street, separating the premises in question from the said other tract on which said houses were built, the same said two tracts having been conveyed to them by different deeds. Biggs and Kibbe occupied the houses till Goodrum took possession, in March, 1856. This undoubtedly shows an actual possession, in Biggs, Kibbe and Overton, to the tract on which their houses were built. But those acts alone do not extend their possession to the lot in question, which was a different tract conveyed to them by another deed, and which was shut out by the fence they constructed. But they did a little grading and hauled some timber on the premises in question with the intention of building a house for Overton, which intention was never carried out.

There was when they took the conveyance from Sheer one of those fences usually called "skeleton fences," made of scantling posts, four by four inches, with two strips of board one by four inches, nailed on for rails, around the half block,

including both tracts, and another adjoining on the west. After Biggs and Kibbe built their new fence between their houses and the premises in question, and after the lumber was hauled on the said premises for Overton's house, this skeleton fence remained on Twelfth and Howard streets, "partly up and partly down" on Twelfth street, down almost sixty feet on the street in front of the lumber, and in this condition, in connection with the new Biggs and Kibbe fence, and the fence in the rear built to inclose Wilson's lot, surrounded the said premises. Thus the lot stood at the time of the conveyance to Whiting on the first day of April, 1855. It may be conceded, for the purpose of the argument, that the commencing to grade and hauling lumber on the lot to build a house for Overton in connection with the skeleton fence was sufficient to make a prima facie case of "actual possession" in Biggs, Kibbe and Overton, within the meaning of the Van Ness ordinance. But "such possession must be continued" by Whiting for the full period limited by the proviso, to be available to pass the title to him. What evidence is there of "actual possession" in Whiting? None but the following: The fence as before mentioned—the skeleton fence on the streets, continuing in the condition last described, "partly up and partly down." The lumber deposited on the lot by the former claimants remained for a while, and Sheer says: "Mr. Whiting, their grantee, had the charge and sale of it. Don't know how long Whiting retained charge. The lumber remained there two or three months after Overton got back, sometime in 1855. The lumber was there when Mr. Whiting proposed to sell it." Overton returned in October, 1854. This is all the evidence of any kind whatever tending in the slightest degree to show a possession by Whiting. It does not appear that Whiting himself, or any tenant, or anybody in his employment, or by his authority, ever set foot upon the premises, or ever exercised any act of ownership over it, or ever set up any claim to it. It does not appear that he owned, or claimed to own, the lumber left upon the land by Biggs, Kibbe and Overton. The title to the lumber did not pass by the conveyance of the land. Whiting "had the charge and sale of it," of the lumber, but whether on his own account or somebody else does not appear. It was not put there by him, and was there while under his charge till sold, because it had been left by those who owned it. He

does not appear to have claimed any title to it. His action in respect to the lumber was no act of ownership, or indicating ownership of the land. The fact of its being there under the circumstances is of no significance on the question of dominion over the land. Had the lumber lain in the street, or on any other vacant lot, his action in regard to it, if he had charge of it, would have been precisely the same. Unless the skeleton fence, partly up and partly down on the street, without the party having ever set foot upon the lot, or performed any act of dominion or control, or setting up any claim, otherwise than is indicated by taking a deed and putting it on record, and having charge of some lumber, which other parties had left upon the lot till its sale and removal, constitutes an "actual possession" of the land, there is no evidence of any sort whatever tending to show that Whiting ever was in actual possession of the premises in question. The acts shown certainly do not bring the case within the definition of actual possession adopted in Wolf v. Baldwin, 19 Cal. 313, and which has since in numerous instances been given in instructions to jurors, which have been approved on appeal. Mr. Chief Justice Field in that case says: "By actual possession, as the terms are here used, is meant that possession which is accompanied with the real and effectual enjoyment of the property. It is the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others; and this possession must be evidenced by occupation or cultivation, or other appropriation, according to the locality and character of the particular premises. An inclosure, by an ordinary fence, of the premises, without residence thereon, or improvements or cultivation, or other acts of ownership, is of itself insufficient." And Mr. Justice Baldwin's opinion, although expressed in different phraseology, is to the same effect. This has been the approved construction of the "actual possession," required by the act for the last six years. There is nothing to indicate that Biggs, Kibbe and Overton were in possession, or exercised any domain or control over the premises, subsequent to their conveyance, or that Whiting ever took possession or exercised domain over the land. The possession, therefore, does not appear to have been continued till the introduction of the ordinance into the common council, or to have been interrupted by an intruder from

whom possession might have been recovered. Aside from a want of positive testimony to make out a prima facie case, there are circumstances of a negative character which throw suspicion on the plaintiff's case. Whiting was not examined as to his possession. Goodrum went into possession in March, 1856, under his conveyance, in pursuance of the sale, in his foreclosure suit, and he has been in the adverse possession for a period of more than eleven years. Six years had elapsed after Goodrum's entry before Whiting conveyed to plaintiff's grantor. That is to say, unless Whiting acquired title, under the Van Ness ordinance, the bar of the statute of limitations had attached in favor of Goodrum more than a year before Whiting conveyed, and it does not appear that Whiting during this long adverse possession ever set up any claims to the premises, under the Van Ness ordinance, or otherwise. If he really claimed title in good faith, or was conscious of having a good title under the Van Ness ordinance, it is scarcely probable that he would have remained silent so long. The case upon the record is liable to the suspicion that it may be one of that too large class of cases where parties, after a long lapse of time, have discovered some flaw in the proceedings by which parties have acquired title to land, and bought in the outstanding title after the property has become valuable for speculative purposes. It may not be a case of the kind, but whether it be or not, when parties rely for a recovery upon technical defects in the transfer of title to deprive others, who have purchased the lands in good faith and long improved and enjoyed them, under the belief that they owned them, [they] cannot complain if they are required to make by proofs a strict technical title.

In this instance we think the plaintiff failed to show a prima facie case, and that the district court was correct in granting the nonsuit. The nonsuit was set aside on the ground alone that it was improperly granted. In this we think the court erred.

Order setting aside the nonsuit, and granting a new trial, reversed.

We concur: Sanderson, J.; Shafter, J.; Currey, C. J.; Rhodes, J.